**In re Joseph M. REINBOLD, SSN 504–92–7763, and Deborah M. Reinbold, SSN 504–92–3763, Debtors.**

**William J. PFEIFFER, Chapter 7 Trustee, Appellant,**

**v.**

**Terry THOMAS, Norwest Bank South Dakota, N.A., Joseph M. Reinbold and Deborah M. Reinbold, Appellees.**

**No. CV 94–1023.**

United States District Court, D. South Dakota, Northern Division.

May 18, 1995.

William J. Pfeiffer, Chapter 7 Trustee, Aberdeen, SD.

Mark A. Anderson, McNeary & Moen, Aberdeen, SD, for Terry Thomas, Norwest Bank South Dakota.

Harvey A. Oliver, Jr., Aberdeen, SD, for Joseph M. Reinbold and Deborah M. Reinbold.

AMENDED MEMORANDUM OPINION

PIERSOL, District Judge.

Appellant and plaintiff in the case below, is the bankruptcy trustee for Joseph and Deborah Reinbold, debtors who filed for Chapter 7 bankruptcy on December 14, 1992. Defendants are the Reinbolds, Terry Thomas, and Norwest Bank.[1] Joseph Reinbold is a me-

1. The original suit was also brought against the Aberdeen law firm of Bantz, Gosch, Cremer, Peterson & Oliver. The law firm filed a with- drawal of claim to any security interest on April 4, 1994. Harvey Oliver was also one of the

chanic whose hobby was mud racing. Appellant refers to the Reinbolds as "a young couple living in the small town of Frankfort, South Dakota." Deborah was 25 at the time of the trial, had been married eight years, and worked outside the home, earning $7000.00 or $8000.00 a year. In 1990 or 1991, Joseph built a mud racer, piecemeal, using a credit card for some parts, and with Deborah helping to pay for the vehicle. Thomas, age 50, owns two cable television companies in Redfield, SD. Thomas and Reinbold met in 1988 and became friends. Reinbold was usually the mechanic who worked on Thomas' cars when he took them to Schroeder's Oldsmobile.

In 1991, Joseph Reinbold approached Thomas about helping to solve his financial difficulties. Thomas subsequently took out two loans from Norwest Bank, giving the proceeds to the Reinbolds and pledging property owned by the Reinbolds as security. Thomas also pledged a Corvette that Thomas himself owned.

When Reinbolds filed for bankruptcy in 1992, their Schedule D listed Article 9 liens held by Terry Thomas and Norwest Bank on tools, a 1978 4x4 pickup, and a mud runner. On April 8, 1993, the trustee filed suit in Bankruptcy court seeking to void those liens. In a court trial held May 16, 1994, Judge Hoyt found for the defendants. The trustee brings this appeal, listing some thirteen issues for consideration.

## FACTS

On June 3, 1991, Norwest Bank loaned Thomas $22,611.00, taking a security interest in a 1958 Chevrolette Corvette, # J58S 103266; a 1978 Chevrolet 4x4 Pickup, # CKL248F348514; and a Power Pro Custom Made Mud Racer. Thomas deposited the loan into Reinbold's account. Norwest placed liens on both the Corvette and the pickup; neither lien is dated, although both list Thomas as owner. On June 7, 1991, a Financing Statement was filed with the South Dakota Secretary of State: Thomas signed as Debtor, Norwest as secured party. Listed as collateral was a 1991 Power Pro Custom Made Mud Racer. On July 18, 1991, the Reinbolds added Thomas' name to the title for the 1978 Chevy pickup.

On April 21, 1992, Thomas renegotiated the loan with Norwest, buying the paper from the June 3, 1991, loan and taking an additional $4000.00 to purchase a house in Frankfort, SD. On April 30, 1992, a Contract for Deed was executed in which Thomas sold the house in Frankfort to the Reinbolds. Thomas executed a Warranty Deed for the property in exchange for $4000.00. The deed appears to be undated and unsigned.

On June 3, 1992, a Loan Assumption Agreement was executed between Thomas and the Reinbolds [2] in which Reinbold: (1) acknowledged that the loan from Norwest to Thomas was for Reinbold's benefit; (2) acknowledged that Thomas had taken out an additional $4000 to purchase a house for the Reinbolds, which was sold to them on a contract for deed; (3) acknowledged his poor financial condition; (4) granted Thomas a security interest in his tools; (5) agreed to retire Thomas' debt; and (6) granted Thomas a security interest in the mud racer and 4x4 pickup in which Norwest already held a security interest.

On June 8, 1992, the Security Agreement of April 4, 1992, was amended to correct the serial number listed for a vehicle owned by Reinbolds which secured loan made to Thomas. On July 22, 1992, a second Financing Statement was filed with the Secretary of State. Joseph Reinbold signed as Debtor, Terry Thomas signed as Secured Party, and the following was listed as secured property: a 1978 Chevrolet 4X4 Pickup, Serial No. CKL246F34851Y; all Mechanic (Snap–On)

original defendants and is not part of this appeal. Oliver is Joseph Reinbold's brother-in-law.

2. The Loan Assumption Agreement was prepared by Harvey Oliver, the Reinbolds' attorney. [TR 57]. The appellant argues that Oliver was working on their bankruptcy petition at the same time and that the agreement is an inappropriate part of the prepetition plan. [Appellant's Brief at 9]. There are three copies of this Loan Assumption Agreement in the record [Exhibit 2 and Notice of Appeal: Thomas Answer—Exhibit A and Reinbold Answer—Exhibit A]—only the trial exhibit is dated.

Tools & Tool Boxes; and a Power Pro Custom Made Mud Racer.

On December 14, 1992, the Reinbolds filed a petition for a Chapter 7 bankruptcy.

## INSIDER STATUS

■ Appellant's first three issues are argued together and center upon Appellant's contention that Thomas is an "insider" because he was a friend of the Reinbolds. Appellant states that the listed examples of insiders from the Bankruptcy code are not limiting, citing the Rules of Construction at 11 U.S.C. § 102(3). Appellee responds that "friendly relationships alone are insufficient to provide a basis for applying 'insider' status upon individuals," citing *In re Hollar,* 100 B.R. 892 (Bkrtcy.D.Ohio 1989).

In its oral findings, the trial court first examined the statutory definition of "insider." The Code defines an "insider" differently depending upon the status of the debtor. If the debtor is an individual, the definition *includes:*

(i) relative of the debtor or of a general partner of the debtor;

(ii) partnership in which the debtor is a general partner;

(iii) general partner of the debtor, or

(iv) corporation of which the debtor is a director, officer, or person in control[.]

11 U.S.C. § 102(3). The definition is not all-inclusive. Thomas does not fit into one of the four categories listed in 11 U.S.C. § 101(31)(A), as was brought out at trial with both Thomas and Reinbold testifying they were not related, partners, or participants in a corporate endeavor.

The court next referred to a test for an "insider" that comes from the legislative history of the Code provision: an insider "is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." *In re Standard Stores, Inc.,* 124 B.R. 318, 324 (Bkrtcy. C.D.Cal.1991) (citations omitted).

The first prong of the *In re Standard Stores* test is met in this case. Testimony established that Thomas and Reinbold were close friends: Thomas admitted during trial that he would not have loaned money to just anyone, and Joseph Reinbold felt comfortable enough to approach Thomas for financial help. Joseph was also the mechanic who would stay late to work on Thomas' vehicles when Thomas needed them.

Testimony also established that the Thomas was a mentor or father-figure to Reinbold. At age 50 and the owner of two cable television companies, Thomas was familiar with financial matters. Conversely, Reinbold comes across in the trial transcript as unversed at best. Thomas testified that he met with Deborah and Joseph before taking out the first loan:

> Well, on one or more occasions I remember talking to them at lunch at the Pizza Hut in Redfield where she worked in regards to what they were going to do and what their financial conditions were and I told them what I could do and that sort of thing.

[Trial Transcript at 67]. Nevertheless, there is no testimony that the relationship was ever more social than having lunch to talk about some kind of consolidation loan.

■ Furthermore, case law demonstrates that friendship alone is insufficient to confer insider status—a *de facto* or *de jure* family relationship is required. *In re Standard Stores, Inc.,* 124 B.R. at 323 (finding former brother-in-law was not insider,[3] even though he still considered himself "family," because he did not meet the statutory definition of "relative" in 11 U.S.C. § 101(41)); *In re Hollar,* 100 B.R. at 892 (finding a fiancee was not an insider because no evidence was presented to show insider status beyond the relationship itself); *Matter of Montanino,* 15 B.R. 307, 310 (Bkrtcy.D.N.J.1981) (finding parents of woman with whom debtor lived for five years were insiders when debtor held them out to be relatives).

The second prong of the *In re Standard Stores* test is whether the transfer in ques-

---

**3.** The brother-in-law was ultimately held to be an insider because he was the general manager of the debtor-business. *In re Standard Stores, Inc.,* 124 B.R. at 325.

tion was a less than arm's length transaction. 124 B.R. at 325. In finding an insider relationship, *In re Standard Stores* looked at the fact that repayment was guaranteed as a direct result of the relationship; that the loan was significant yet unsecured; and that the transferee never inquired into the debtor's ability to repay the loan. *Id.*

The instant facts do not indicate anything less than an arm's length transaction. While the documentation is less than perfect, the transactions in question appear to have been business-like arrangements. Joseph accompanied Thomas to Norwest Bank at the time the first loan was made. Although Joseph was present and Thomas listed property belonging to the Reinbolds as collateral for the loan, the bank did not ask Joseph to sign the promissory note. The proceeds of the loans were placed directly into the Reinbolds' account at Norwest. Payments on the loan were taken directly out of Joseph Reinbold's salary at Schroeder's Oldsmobile. The only times Thomas made payments on the loan were when the bank notified him that Reinbold had failed to make them. Outside of the lunches arranged to discuss the loan and Joseph accompanying Thomas to the bank at the time the first loan was made, there is no testimony that Thomas and the Reinbolds ever even met outside the auto dealership.

The third test the trial court refers to is "control." Control has been defined as the creditor dominating the debtor. *In re Hyperion Enterprises, Inc.*, 144 B.R. 228, 235 (Bkrtcy.D.R.I.1992) (quoting *In re Int'l Club Enterprises, Inc.*, 109 B.R. 562, 565 (Bkrtcy. D.R.I.1990)). As the trial court found, that kind of control is missing in the instant case.

■ "[T]he issue of whether defendant is an insider is a mixed question of law and fact, if not solely question of fact." *In re Standard Stores*, 124 B.R. at 320 n. 2 (citing *In re Schuman*, 81 B.R. 583, 586 n. 1 (9th Cir. 1987)). As a question of fact, it is due a clearly erroneous standard of review. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746

(1948). The court "fail[ed] to find in this particular case where there is anything to be gained by this particular person that would put him in a category other than a friend." [TR at 79–80]. That finding was not clearly erroneous.

"Principles of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented." *Manning v. Upjohn Co.*, 862 F.2d 545, 547 (5th Cir.1989). *See also Stoetzel v. Continental Textile Corp.*, 768 F.2d 217, 222 (8th Cir.1985) ("We may ... affirm on any ground supported by the record, even though that ground was not directly addressed (or addressed at all) in the court below."); *Brown v. St. Louis Police Dept.*, 691 F.2d 393, 396 (8th Cir.1982), *cert. denied*, 461 U.S. 908, 103 S.Ct. 1882, 76 L.Ed.2d 812 (1983). Because I affirm the trial court's finding that Thomas was not an insider, Appellant's remaining issues are not reached.

The judgment is affirmed.