**In re JWJ CONTRACTING CO., INC., Debtor,**

**Endo Steel, Inc., Appellant,**

v.

**Joseph J. Janas, Trustee, Appellee.**

**No. 03–15388.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 2004.

Filed June 14, 2004.

---

Michael S. Rubin, Mariscal, Weeks, McIntyre & Friedlander, P.A., Phoenix, AZ, for the defendant-appellant.

Thomas C. Axelsen, Mohr, Hackett, Pederson, Blakely & Randolph, Phoenix, AZ, for the plaintiff-appellee.

Before THOMPSON, TASHIMA, and RAWLINSON, Circuit Judges.

DAVID R. THOMPSON, Senior Circuit Judge.

JWJ Contracting ("JWJ") made a payment to its subcontractor Endo Steel, Inc. ("Endo") within the 90 days preceding the filing of JWJ's bankruptcy petition. In view of that payment, Joseph Janas, JWJ's Chapter 7 Trustee ("Trustee"), initiated an action in the bankruptcy court to avoid the payment as a preference under Bankruptcy Code § 547(b).

The bankruptcy court rejected the Trustee's preference claim and granted summary judgment in favor of Endo, holding that JWJ's payment, which replaced a previously dishonored check, was a contemporaneous exchange for new value in the form of Endo's earlier release of its Little Miller Act bond claim, and thus the payment was exempt from avoidance under Bankruptcy Code § 547(c)(1). The Bankruptcy Appellate Panel ("BAP") reversed. *See Janas v. Marco Crane & Rigging Co. (In re JWJ Contracting Co., Inc.)*, 287 B.R. 501 (9th Cir. BAP 2002). It held that because Endo had given JWJ an unconditional release of the bond claim in exchange for what turned out to be an NSF check, the subsequent payment that replaced the NSF check was given in exchange for what had become an unsecured debt, and did not result in a contemporaneous exchange for new value. We agree and affirm the BAP's decision.

## I

### Background

The City of Phoenix contracted with JWJ to improve a runway at Sky Harbor International Airport. Public improvement projects in Arizona are subject to Arizona Revised Statute ("A.R.S.") § 34–222, known as the "Little Miller Act" because it is based on the federal Miller Act, 40 U.S.C. §§ 270a–270d. *See Paul Schoonover, Inc. v. Ram Constr., Inc.,* 129 Ariz. 204, 630 P.2d 27, 30 (1981). As required by the Little Miller Act, JWJ provided a performance and payment bond (the "Bond") to guarantee completion of the project and payment of suppliers of labor and materials.

JWJ subcontracted with Endo to supply and install steel reinforcing bars required for the project. During construction, JWJ encountered financial difficulties and fell behind on its payments to Endo. On April 14, 1994, JWJ gave Endo a check (the "NSF Check") in the amount of $194,286.71 as payment for work performed by Endo. Upon receipt of the check, Endo issued an unconditional release of lien (the "Release"). The Release contained wording that had been standardized by A.R.S. § 33–1008. It unconditionally relinquished Endo's claim against the Bond.

The NSF Check was dishonored due to insufficient funds. Endo then demanded, and JWJ remitted, a cashier's check for the same amount. That check (the "Cashier's Check") was delivered to Endo on May 2, 1994 (19 days after the delivery of the NSF Check and issuance of the Release). On July 1, 1994, JWJ filed a Chapter 11 petition for bankruptcy. The case was later converted to a Chapter 7 liquidation and the Trustee initiated this preference action to recover the $194,286.71 payment made by the Cashier's Check.

## II

### Standard of Review

We review decisions of the BAP de novo. *Carrillo v. Su (In re Su),* 290 F.3d 1140, 1142 (9th Cir.2002). We independently review the decision of the bankruptcy court. *Id.* The bankruptcy court's interpretation of the Bankruptcy Code and its decision to grant summary judgment are reviewed de novo. *Id.; Beeler v. Jewell (In re Stanton),* 303 F.3d 939, 941 (9th Cir.2002).

## III

### Discussion

If a debtor pays an antecedent debt within the 90 days preceding the debtor's bankruptcy petition, the debtor's trustee may file a preference action to avoid the payment under 11 U.S.C. § 547(b). The purpose of the trustee's avoidance power is to "discourage creditors from racing to the courthouse to dismember the debtor during its slide into bankruptcy and to further the prime bankruptcy policy of equal distribution among similarly situated creditors." *Danning v. Bozek (In re Bullion Reserve of N. Am.),* 836 F.2d 1214, 1217 (9th Cir.1988).

There are exceptions to a trustee's power to avoid a preference, one of which is the "contemporaneous exchange" exception. Under this exception, a trustee may not avoid a transfer "to the extent that such transfer was—(A) intended by the debtor and the creditor ... to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange[.]" 11 U.S.C. § 547(c)(1). The rationale for the exception is that, because new value is given, a contemporaneous exchange does not diminish the debtor's estate. *Milchem, Inc. v. Fredman (In re Nucorp En-*

*ergy, Inc.)*, 902 F.2d 729, 733 (9th Cir. 1990).

■ In *O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955 (9th Cir.1989), we held that the release by a subcontractor of its claim against a surety constituted new value for the debtor's estate for purposes of § 547(c)(1). Relying on the *Fegert* decision, the bankruptcy court granted summary judgment in favor of Endo. The present case differs from *Fegert*, however, in an important aspect. Here, the NSF Check, which was exchanged simultaneously for a release of Endo's Bond claim, was dishonored and replaced by the Cashier's Check. This factual difference, as the BAP concluded, "change[d] the nature of the transaction from one intended for a contemporaneous cash exchange to a credit transaction." 287 B.R. at 511, *quoting Hall–Mark Elecs. Corp. v. Sims (In re Lee)*, 179 B.R. 149, 163 (9th Cir. BAP 1995), *aff'd*, 108 F.3d 239 (9th Cir.1997).

In *Lee*, we did not reach the question whether a creditor's acceptance of what turns out to be a dishonored check, in exchange for new value given to the debtor, transforms what would have been a contemporaneous exchange within the meaning of § 547(c)(1) into a credit transaction. Other circuits have held that it does. We now join those circuits.

■ As the Fourth Circuit succinctly stated, "any payment to an unsecured creditor within the ninety-day preference period to make good a bounced check is an avoidable preference provided that the requirements for an avoidable preference are otherwise satisfied." *Morrison v. Champion Credit Corp. (In re Barefoot)*, 952 F.2d 795, 797 (4th Cir.1991). The facts in *Barefoot* closely resemble the facts in the present case. There, a debtor paid its debt to a secured creditor by check, and the creditor released its security interest before the check cleared. After the check

bounced, the debtor made three wire transfers to the creditor to replace the dishonored check.

The debtor's Chapter 7 trustee sought to avoid the wire transfers as preferences. In upholding avoidance of the transfers, the Fourth Circuit explained that "[t]he exception for a contemporaneous exchange does not ordinarily apply to credit transactions, and the dishonor of a check inevitably creates an antecedent debt owed by the debtor which any subsequent payments to make good the check, no matter how quickly made, would be satisfying." *Id.* at 800. The Eleventh Circuit had previously arrived at the same conclusion. *See Goger v. Cudahy Foods Co. (In re Standard Food Services, Inc.)*, 723 F.2d 820, 821 (11th Cir.1984).

Endo argues that its Release, although issued on April 14, became effective only upon payment; therefore, it gave "new value" to JWJ on May 2, contemporaneously with its receipt of the Cashier's Check. The difficulty with this argument is that Endo's April 14 Release was unconditional; its viability was not dependent upon receipt of payment.

When Arizona revised its lien statute in 1992, it provided four standardized forms of lien releases: conditional and unconditional releases for installment and final payments. A.R.S. § 33–1008. Although the statute warns lienholders to use the conditional form if they have not been paid, Endo used the unconditional form. As required by the statute, Endo's unconditional release form contained in large letters the following:

THIS DOCUMENT WAIVES RIGHTS UNCONDITIONALLY AND STATES THAT YOU HAVE BEEN PAID FOR GIVING UP THOSE RIGHTS. THIS DOCUMENT IS ENFORCEABLE AGAINST YOU IF YOU SIGN IT, EVEN IF YOU HAVE NOT BEEN PAID. IF YOU HAVE NOT BEEN

PAID, USE A CONDITIONAL RE-LEASE FORM.

Endo argues that despite this language, the legislative intent behind the 1992 amendment to Arizona's lien statute was merely to standardize forms, not to create a mechanism by which lienholders would end up releasing their rights without being paid. The language of the statute, however, is clear. Endo's reliance on legislative intent is misplaced. *See Barnhill v. Johnson,* 503 U.S. 393, 401, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992).

We conclude that Endo's unconditional release given on April 14, albeit in exchange for what turned out to be an NSF check, resulted in a credit transaction. JWJ's unsecured debt to Endo arising from that transaction was extinguished by delivery of the Cashier's Check on May 2. Thus, the April 14 Release and the May 2 payment were not contemporaneous. The May 2 payment, therefore, is avoidable as a preference under § 547(b) of the Bankruptcy Code.

The decision of the BAP, which reversed the Bankruptcy Court, is

**AFFIRMED.**