81 F.3d 168
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re GREER WEST INVESTMENT LIMITED PARTNERSHIP, an Arizona
Limited Partnership, Debtor-Appellant,
WAKE FOREST INC., an Arizona Corporation, Appellant,
v.
TRANSAMERICA TITLE INSURANCE COMPANY, Trustee, Trustee-Appellee.
 No. 94-15670.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 12, 1995.*
Decided March 25, 1996.
 
 Before: SNEED, HALL, and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 This appeal turns on the question of whether a law firm that holds an unsecured claim against its client, a Chapter 11 debtor, is an "insider" of the debtor within the meaning of 11 U.S.C. § 101(31). The bankruptcy court for the District of Arizona found that the law firm was an insider. It therefore concluded that the law firm's vote in favor of the debtor's reorganization plan would not constitute approval by an impaired class as required by 11 U.S.C. § 1129(10). It further held that the law firm's claim did not lose its insider status when it was transferred to a third-party assignee.
 
 
 3
 The district court, on an interlocutory appeal, affirmed the bankruptcy court's finding. We have jurisdiction under 28 U.S.C. § 158(d) and, for the reasons that follow, we too affirm the finding of the bankruptcy court.
 
 I.
 
 4
 The debtor, Greer West Limited Partnership, is a limited partnership controlled by a Phoenix lawyer named Richard Feldheim. Feldheim formed Greer West for the purpose of taking title to two troubled properties he controlled via other partnerships. At the time, both properties were in foreclosure due to default on notes held by Transamerica Title Insurance Company (Transamerica). Transamerica is the trustee of the trust that holds title to both parcels.
 
 
 5
 The law firm, Gallagher & Kennedy, is a prominent Phoenix law firm. One of its attorneys, David Durfree, was a close friend and former law partner of Feldheim. Beginning in 1984 or 1985, Durfree served as counsel to Feldheim and his various ventures, including, eventually, the inchoate Greer West partnership. One day after the formation of Greer West, Durfree sent a bill to Feldheim in the amount of $4,686.00.
 
 
 6
 Greer West did not pay the bill. Just two weeks after it was formed, it filed a voluntary Chapter 11 petition. The date of the filing was July 11, 1991. Greer West listed its debt to Gallagher & Kennedy as a general unsecured claim.
 
 
 7
 Transamerica, Greer West's primary secured creditor, objected to the debtor's reorganization plan. However, all Greer West had to do to "cram down" its proposed plan was win the affirmative vote of one class of impaired creditors. 11 U.S.C. § 1129(10). Gallagher & Kennedy's unsecured claim made it a perfect candidate. No doubt aware of this, Transamerica tried to pay off Gallagher & Kennedy's claim. At Feldheim's suggestion, Durfree refused Transamerica's offer.
 
 
 8
 Anxious to thwart Transamerica's plan, Feldheim contacted his friend and business associate Reginald Winssinger, a real estate investor and president of Wake Forest, Inc. Feldheim arranged for Wake Forest to purchase Gallagher & Kennedy's claim against the partnership. Greer West subsequently filed a second amended reorganization plan, which created an equity participation for Wake Forest in which Wake Forest would receive ten percent of the profits from any sale of the parcels of land.
 
 
 9
 Transamerica moved to disqualify Wake Forest's vote, complaining that the assignment was made in bad faith. Transamerica also argued that even if the assignment was valid, Wake Forest held an "insider" claim and therefore could not cast the crucial vote that would allow Greer West to impose its plan on objecting creditors.
 
 
 10
 The bankruptcy court agreed. In a written ruling, the court found that Gallagher & Kennedy held an insider claim. It further held that the assignment to Wake Forest did not change the status of the claim. This meant that for purposes of Chapter 11's cram down provisions, Wake Forest's approval would be an impermissible insider vote.[1] The result was that Greer West could not force its objecting creditors to accept its plan.
 
 
 11
 Greer West and Wake Forest immediately took an interlocutory appeal to the district court, which affirmed. This appeal followed.
 
 II.
 
 12
 The bankruptcy code sets numerous conditions to court approval of a plan of reorganization. The condition at issue here provides that when a plan impairs a class of creditors, the court can only approve the plan if "at least one class of claims that is impaired under the plan has accepted the plan." 11 U.S.C. § 1129(10). The code, however, goes on to disqualify any "insider" of the debtor from approving the plan. Id. Here, the parties agree that Wake Forest is the only creditor left in the impaired class that can approve Greer West's reorganization plan. Thus, if Wake Forest's vote is disqualified from voting, the bankruptcy court cannot approve Greer West's plan.
 
 
 13
 The appellants first take umbrage with the bankruptcy court's conclusion that, assuming Gallagher & Kennedy is an insider, Wake Forest took on insider status through its purchase of the insider's claim. The bankruptcy court focussed on the status of the claim rather than the identity of the holder of the claim, and reasoned that "[i]t would violate the meaning of the Code if insider status could be changed by simply transferring the claim to one who is not an insider." Minute Entry of July 28, 1992, at 6 [hereinafter Minute Entry].
 
 
 14
 We approve the bankruptcy court's approach, which is amply supported by caselaw. "As a general rule, 'an entity which acquires a claim steps into the shoes of that claimant, enjoying both the benefits and the limitations of the claim, as a successor in interest.' " In re Holly Knoll Partnership, 167 B.R. 381, 385 (Bankr.E.D.Pa.1994) (quoting In re Applegate Property, Ltd., 133 B.R. 827, 833 (Bankr.W.D.Tex.1991)). This rule makes abundant sense in a case such as this in which there is a strong incentive for the debtor to make sure that at least one class of impaired claims remains in sympathetic hands. Were courts to allow purchasers of insider claims to approve Chapter 11 plans without any judicial scrutiny, "[d]ebtors unable to obtain the acceptance of an impaired creditor simply could assign insider claims to third parties who in turn could vote to accept. This the court cannot permit." In re Heights Ban Corp., 89 B.R. 795, 799 (Bankr.S.D.Iowa 1988).
 
 
 15
 Because we agree with the bankruptcy court that Wake Forest assumed the claim subject to its insider status we next address whether Gallagher & Kennedy is an insider. Only if it is not would we need to examine whether Wake Forest is itself an insider.
 
 III.
 
 16
 The bankruptcy code does not provide direct guidance on the question whether Gallagher & Kennedy is an insider because its definition of the term "insider" consists only of a nonexclusive list of examples. It provides that if, as here, the debtor is a partnership, the term insider "includes":
 
 
 17
 (i) general partner in the debtor;
 
 
 18
 (ii) relative of a general partner in, general partner of, or person in control of the debtor;
 
 
 19
 (iii) partnership in which the debtor is a general partner;
 
 
 20
 (iv) general partner of the debtor; or
 
 
 21
 (v) person in control of the debtor.
 
 
 22
 11 U.S.C. § 101(31)(C); see also In re Friedman, 126 B.R. at 69 ("The use of the word 'includes' is indicative of Congress' intent not to limit the classification of insiders to the statutory definition.").
 
 
 23
 Thus, the inquiry into whether a person is an insider must focus on the nature of the relationship between the purported insider and the debtor. The goal is to determine whether the relationship in question is fraught with the same potential for improper influence as the relationships specifically enumerated in the statute. See In re Gilbert, 104 B.R. 206, 210 (Bankr.W.D.Mo.1989) ("contemporary insider analysis invites the Court to consider whether the disputed relationship is similar to or bears characteristics of any of the relationships specified in the statute").
 
 
 24
 The purpose of this inquiry is to guard against collusive approval of plans by persons whose dealings with the debtor are at less than arm's length. See In re Friedman, 126 B.R. at 70; see also S.Rep. No. 95-989, 95th Cong., 2d Sess. 25 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5810 ("An insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm[']s length with the debtor."); H.R.Rep. No. 95-595, 95th Cong., 2d Sess. 312 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6269 (same). We must determine whether the bankruptcy court erred in applying this functional definition of "insider" to the facts of this case.
 
 
 25
 The bankruptcy court began its analysis with the observation that "not every attorney will be an insider if [his] client files bankruptcy." Minute Entry at 4; see also Kepler v. Schmalbach (In re Lemanski), 56 B.R. 981, 983 (Bankr.W.D.Wis.1986). We think that this observation is consistent with the functional approach to determining insider status described above.
 
 
 26
 The bankruptcy court then found that the behavior of Gallagher & Kennedy supported a conclusion that the law firm was not acting independently of its client the debtor:
 
 
 27
 GK [Gallagher & Kennedy] received a check for full payment on their bill. Their client requests them to not accept such payment which client request is followed by the attorney. Their client locates another to pay and acquire the claim and the law firm acts exactly as its client requests by accepting such payment and transferring the claim as requested by their client.
 
 
 28
 Minute Entry at 4-5. We agree with the bankruptcy court that these facts--the debtor's lawyers acting at the debtor's behest in such a way as to influence the disposition of the bankruptcy estate--constitute "indicia of control [that are] very similar to the control relationships which are expressly defined to be insiders in Section 101(31)." Minute Entry at 5.
 
 
 29
 The appellants, however, argue that the bankruptcy court was wrong to consider the degree of control the debtor exercises over the alleged insider, because the statutory examples of insiders evidence a concern only about the control an insider may have over the debtor. We disagree. Litigation over whether a person is an insider occurs most frequently in the context of a claim of preferential transfer. "The focus in these cases is whether the creditor's relationship with the debtor places the creditor in a position to influence or control the debtor's actions such that the interests of other creditors are frustrated." In re Gilbert, 104 B.R. at 210.
 
 
 30
 By contrast, the concern in cases such as this, in which a debtor is attempting to cram down a plan of reorganization, is "to forestall the voting of a creditor who is so beholden to or controlled by the debtor as to in effect be an alter ego of the debtor." Id. We therefore conclude that control by a Chapter 11 debtor over a creditor can properly support a finding of insider status. We note that our conclusion comports with the purpose of Chapter 11's exclusion of insiders from the universe of creditors who can accept a plan: "to prevent a debtor from using an insider-dominated class to satisfy the requirement that at least one impaired class of creditors vote[s] in favor of the plan." In re Holly Knoll, 167 B.R. at 385.
 
 
 31
 Although the bankruptcy court premised its finding of insider status on other factors as well,[2] we think that its finding is adequately supported by the evidence showing that Feldheim, who controlled the debtor, also exerted some degree of control over the behavior of his creditor, Gallagher & Kennedy. At the very least, the bankruptcy court's finding is not clearly erroneous.
 
 IV.
 
 32
 We conclude that the bankruptcy court did not err in finding that Gallagher & Kennedy is an insider of Greer West. We also agree that the insider claim did not change status upon its assignment to Wake Forest. We therefore affirm the district court order, which affirmed the bankruptcy court's order disqualifying Wake Forest's vote and refusing to confirm Greer West's Second Amended Plan of Reorganization.
 
 
 33
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The bankruptcy court did not make any finding regarding whether Wake Forest would itself qualify as an insider independent of its having acquired a claim from an insider
 
 
 [2]
 It noted, for instance, that an attorney owes a fiduciary duty to his client, which might prohibit him from acting independently as a creditor when his client files for bankruptcy. This general concern finds some support in our caselaw. See Stoumbos v. Kilimnik, 988 F.2d 949, 959 (9th Cir.) (concluding that a corporate executive's waiver of the debtor corporation's right to collateral was inequitable with respect to other creditors both because he was an insider of the corporation and because he had a fiduciary duty to it), cert. denied, 114 S.Ct. 190 (1993). We think, however, that when the alleged insider does not fit within the explicit statutory examples, the better approach is to look to the actual dealings of the debtor and the purported insider