NOT FOR PUBLICATION

FILED

APR 05 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. NV-12-1456-PaKiTa |
| | NV-12-1474-PaKiTa |
| THE VILLAGE AT LAKERIDGE, LLC, fka | (Cross-appeals) |
| Magnolia Village, LLC, | |
| | Bk. No. 11-51994-BTB |
| Debtor. | |
| _____ | |
| | |
| THE VILLAGE AT LAKERIDGE, LLC, fka | |
| Magnolia Village, LLC; ROBERT | |
| ALAN RABKIN, M.D., | |
| | |
| Appellants/ | |
| Cross-appellees, | |
| | |
| v. | **M E M O R A N D U M**[1] |
| | |
| U.S. BANK NATIONAL ASSOCIATION, AS | |
| TRUSTEE, AS SUCCESSOR-IN-INTEREST | |
| TO BANK OF AMERICA, N.A., AS | |
| SUCCESSOR BY MERGER TO LASALLE | |
| BANK NATIONAL ASSOCIATION, AS | |
| TRUSTEE, FOR THE REGISTERED | |
| HOLDERS OF GREENWICH CAPITAL | |
| COMMERCIAL FUNDING CORP., | |
| COMMERCIAL MORTGAGE TRUST 2005- | |
| GG3, COMMERCIAL MORTGAGE PASS | |
| THROUGH CERTIFICATES, SERIES | |
| 2005-GG3, BY AND THROUGH, | |
| CWCAPITAL ASSET MANAGEMENT LLC, | |
| SOLELY IN ITS CAPACITY AS SPECIAL | |
| SERVICER, | |
| | |
| Appellee/ | |
| Cross-appellant. | |
| _____ | |

Argued and Submitted on March 22, 2013,
at Pasadena, California

Filed - April 5, 2013

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Bruce T. Beesley, Bankruptcy Judge, Presiding

_____

Appearances:    Holly E. Estes of Law Offices of Alan R. Smith
                argued for appellant/cross-appellee The Village at
                Lakeridge, LLC; Keith Charles Owens of Venable Llp
                argued for appellee/cross-appellant U.S. Bank
                National Association.

_____

Before: PAPPAS, KIRSCHER and TAYLOR, Bankruptcy Judges.

Chapter 11[2] debtor The Village at Lakeridge, LLC ("Lakeridge") appeals the order of the bankruptcy court granting in part the motion of U.S. Bank National Association as Trustee[3] ("USB") to (A) designate claim of Robert Rabkin and (B) disallow such claim for plan voting purposes ("Designation Motion"). USB cross-appeals (1) the part of the order granting the Designation Motion holding that Dr. Robert Rabkin ("Rabkin") was not a non-statutory insider of Lakeridge and (2) an order denying requests to intervene in discovery disputes ("Discovery Requests"). We AFFIRM in part, REVERSE in part, and VACATE in part the order regarding the Designation Motion. We AFFIRM in part and VACATE in part the order denying the Discovery Requests.

**FACTS**

Lakeridge filed a chapter 11 petition on June 16, 2011. It

_____

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as Civil Rules.

[3] For USB's full authority as trustee, see caption.

-2-

owned and operated a commercial real estate development in Reno, Nevada (the "Property"). It purchased the Property in January 2004 and financed the purchase with a loan, evidenced by a promissory note, from Greenwich Financial Products, Inc. Apparently, USB now holds the fully secured claim for the balance due on this loan, which amounts to about $10 million; this is the only secured claim in the bankruptcy case.

The sole member of Lakeridge is MBP Equity Partners 1, LLC ("MBP"). Kathie Bartlett ("Bartlett") is a member of the board of managers of MBP. The only unsecured claim listed in Lakeridge's bankruptcy schedules was one for $2,761,000.00 held by MBP (the "MBP Claim").[4] Bartlett signed the bankruptcy petition and all related documents on behalf of Lakeridge.[5]

Lakeridge filed a Disclosure Statement and Plan of Reorganization on September 14, 2011.[6] The only claims addressed in the Disclosure Statement and Plan were the fully secured claim of USB and the MBP Claim.

---

[4] The schedules also listed about $50,000 in tenant deposits as unsecured claims. Later, Lakeview withdrew classification of those deposits as unsecured claims when it assumed the leases; USB has not challenged Lakeridge's position.

[5] None of the papers signed by Bartlett indicate her title. We are unable to determine from the record the precise nature of her position and authority in Lakeridge other than that she is a member of the board of managers. She described her position at her deposition as "representative of both the Village at Lakeridge, LLC and the equity owners." Bartlett Dep. 9:10-11, February 9, 2012. However, the parties do not dispute that she was the officer of the debtor responsible for its filings or that she is an "insider" of the debtor.

[6] With changes not relevant in this appeal, the Plan of Reorganization was amended on November 4, 2011, and January 12, 2012.

On October 27, 2011, Rabkin purchased the MBP Claim for the sum of $5,000.00. A Notice of Assignment of the MBP Claim to Rabkin was filed with the bankruptcy court on November 4, 2011.

A hearing was held on the Disclosure Statement on November 7, 2011. It does not appear that the Rabkin assignment was discussed at the hearing. The bankruptcy court approved the Disclosure Statement by order on November 23, 2011.

Bartlett was deposed by USB on February 9, 2012, in her capacity as a representative of Lakeridge.

On June 7, 2012, Rabkin testified at a USB deposition. Early in his deposition, Rabkin testified that he had attended a meeting one hour before the deposition with his counsel and counsel for Lakeridge. When asked what he discussed with Lakeridge's counsel, Lakeridge's attorney objected, invoking the "common interest privilege." Rabkin Dep. 11:20-2, June 7, 2012. Rabkin's counsel joined in the objection and ultimately directed Rabkin not to answer the question.

Rabkin testified to the following matters in that deposition: (1) that he had both a business and close personal relationship with Bartlett; (2) that he saw Bartlett regularly, including on the day of the deposition; and (3) that he purchased the MBP Claim for $5,000 as a business investment and expected to be paid a pro rata dividend of $30,000 under the Lakeridge plan. As to any other interest in the Lakeridge bankruptcy case, Rabkin testified as follows:

> USB COUNSEL: Other than getting paid in this bankruptcy case, do you have any other concerns?
>
> RABKIN: I'm concerned that I may run up a lot of expenses and get paid nothing.

-4-

USB COUNSEL: Other than getting paid the $30,000, do you care whether the Village at Lakeridge plan gets confirmed? Setting aside the payment, if you were to get paid the $30,000, would you care if the plan was confirmed?

RABKIN: I have no other interest in the Village at Lakeridge.

Rabkin Dep. 82:3-14.

Near the end of the deposition, USB, through counsel, offered to purchase the MBP Claim from Rabkin for $50,000; when he declined, counsel increased the offer to $60,000. Rabkin did not accept the offer.[7]

Shortly after the Rabkin deposition, USB by letter requested that the bankruptcy court intervene in two discovery disputes in the bankruptcy case: (1) whether the common interest privilege applied so as to protect disclosure of communications between Rabkin and Lakeridge's counsel; and (2) to compel Bartlett to sit for a second deposition, this time in her individual capacity as opposed to her first deposition as representative of Lakeridge (previously defined as the "Discovery Requests").

The bankruptcy court held a hearing on June 21, 2012, on USB's Discovery Requests. After reviewing letter briefs from USB, Lakeridge and Rabkin, and hearing from their counsel, the court ruled on the record that the Ninth Circuit's decision in United States v. Gonzalez, 669 F.3d 974 (9th Cir. 2012) supported the

---

[7] At a hearing on August 29, 2012, Rabkin indicated that he felt USB's counsel took advantage of a deponent who was under oath by pressuring him to accept a cash offer without an adequate chance to review it. The bankruptcy court would later apologize to Rabkin "on behalf of the legal profession" for the offensive conduct of USB's attorney in the deposition. Hr'g Tr. 21:1-2, August 29, 2012.

-5-

application of the common interest privilege in this case and denied USB's request to compel Rabkin to disclose his communications with Lakeridge's attorneys. As to USB's request for a second deposition for Bartlett, the court ruled that she had been extensively examined already and the court would not require a second examination.

On July 1, 2012, USB filed the Designation Motion. USB contended in that motion that Rabkin was a statutory insider by virtue of the assignment of the MBP insider claim to him, and that he was a non-statutory insider because of his relationship with Bartlett. USB also argued that the assignment of the claim to Rabkin was in bad faith. Lakeridge responded, arguing that Rabkin was neither a statutory nor a non-statutory insider, and that there was no bad faith involved in Rabkin's acquisition of the claim.

The bankruptcy court held an evidentiary hearing on the Designation Motion on August 1, 2012. USB, Lakeridge, and Rabkin were represented by counsel, and Rabkin and Bartlett testified.

After a recess, the bankruptcy court announced its decision on the record. It granted the Designation Motion in part and denied it in part. The court entered an order to memorialize its ruling on August 20, 2012 (the "Designation Order").

First, the Designation Order recited that "The court finds and concludes as a matter of law that Dr. Rabkin is not a non-statutory insider because, among other things: (a) Dr. Rabkin does not exercise control over the Debtor; (b) Dr. Rabkin does not cohabit with Ms. Bartlett and does not pay Ms. Bartlett's bills or living expenses; (c) Dr. Rabkin has never purchased expensive

-6-

gifts for Ms. Bartlett." Designation Order at ¶ 2, August 20, 2012. The bankruptcy court also concluded that the converse was true: that Bartlett exercised no such control or provided gifts to Rabkin.

Next, the bankruptcy court decided that the MBP Claim "was not assigned to Dr. Rabkin in bad faith." Designation Order at ¶ 3. It explained that Dr. Rabkin was not compelled to sell his claim to USB, his purchase of the MBP claim was a legitimate investment, and that Bartlett never asked him to vote in favor of the plan.

However, the bankruptcy court reasoned, "Because [MBP] is a statutory insider, Dr. Rabkin, as the assignee of the claim, acquired the same status as a statutory insider when he purchased the claim." Designation Order at § 6. The court supported its conclusion with citation to several authorities. The Designation Order gave no other explanation for its ruling that Rabkin was a statutory insider. As a consequence, the court decided that "[b]ecause Dr. Rabkin's vote cannot be considered for voting purposes in order to confirm the Debtor's Plan, the Debtor does not have an impaired, assenting class of claims necessary to confirm his Plan." Designation Order at ¶ 9.

Lakeridge and Rabkin both filed timely appeals of the Designation Order. USB also filed a timely cross-appeal challenging the provision of the Designation Order that Rabkin was not a non-statutory insider, and also seeking review of the bankruptcy court's prior order denying the Discovery Requests.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334

-7-

and 157(b)(2)(A),(L) and (O).  We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1.   Whether the bankruptcy court erred in deciding that Rabkin was an insider of Lakeridge under § 101(31).

2.   Whether the bankruptcy court erred in deciding that Rabkin's acceptance of the Lakeridge plan would be excluded under § 1129(a)(10).

3.   Whether the bankruptcy court erred in declining to designate that Rabkin's acceptance of the plan was not in good faith for purposes of § 1126(e).

4.   Whether the bankruptcy court abused its discretion in declining to order that Bartlett submit to a second deposition.

5.   Whether the bankruptcy court erred in refusing to compel Rabkin to answer questions during his deposition based on the common interest privilege.

**STANDARDS OF REVIEW**

Whether a party is an insider in relation to a debtor is a question of fact reviewed for clear error. <u>Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman)</u>, 126 B.R. 63, 67 (9th Cir. BAP 1991).  In making this determination, the bankruptcy court must determine, "on a case-by-case basis whether the relationship between a creditor and its debtor, considered in the light of the statutory scheme, amounts to an 'insider' relationship."  <u>Id.</u>

We review issues of statutory construction, including a bankruptcy court's interpretation of the Bankruptcy Code, de novo. <u>Samson v. W. Capital Partners, LLC (In re Blixseth)</u>, 684 F.3d 865,

-8-

869 (9th Cir. 2012). Construction and application of § 1129(a)(10) is reviewed de novo. W. Real Estate Equities, LLC v. Vill. at Camp Bowie I, LP (In re Village at Camp Bowie I, LP), ___ F.3d ___, 2013 U.S. App. LEXIS 3949 * 17 (5th Cir. 2013).

We review good faith determinations under § 1126(e) for clear error. Figter Ltd. v. Teachers Ins. & Annuity Ass'n of Am. (In re Figter Ltd.), 118 F.3d 635, 638 (9th Cir. 1997).

The bankruptcy court's decisions resolving deposition disputes are reviewed for an abuse of discretion. Childress v. Darby Lumber, Inc., 357 F.3d 1000, 1009 (9th Cir. 2004).

A trial court's application of the attorney-client privilege is reviewed de novo. United States v. Richey, 632 F.3d 559, 563-64 (9th Cir. 2012). The common interest privilege is an extension of the attorney-client privilege. United States v. Gonzalez, 669 F.3d 974, 978 (9th Cir. 2012).

De novo review requires the Panel to review an issue independently, without giving deference to the bankruptcy court's conclusions. First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.), 439 F.3d 558, 561 (9th Cir. 2006); Cal. Franchise Tax Bd. v. Wilshire Courtyard (In re Wilshire Courtyard), 459 B.R. 416, 423 (9th Cir. BAP 2011).

Clear error is found when the reviewing court has a definite and firm conviction that a mistake has been committed. Lewis v. Ayers, 681 F.3d 992, 998 (9th Cir. 2012).

We apply a two-part test to determine objectively whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc). First, we "determine de novo whether the bankruptcy court identified the

correct legal rule to apply to the relief requested." Id.  Second, we examine the bankruptcy court's factual findings under the clearly erroneous standard.  Id. at 1262 & n.20.  We must affirm the bankruptcy court's factual findings unless those findings are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'"  Id.

**DISCUSSION**

**I.**

**Rabkin was neither a statutory nor a non-statutory insider of debtor Lakeridge under § 101(31).**

The fundamental issue raised in this appeal is whether Rabkin was an "insider" as to Lakeridge.  If he was an insider, his vote to accept the Lakeridge plan must be excluded under § 1129(a)(10).

The Bankruptcy Code definition of an insider in § 101(31) for a case involving a corporate debtor[8] provides:

The term "insider" includes- . . .

      (B) if the debtor is a corporation--

            (I) director of the debtor;
            (ii) officer of the debtor;
            (iii) person in control of the debtor;
            (iv) partnership in which the debtor is a general partner;
            (v) general partner of the debtor; or
            (vi) relative of a general partner, director, officer, or person in control of the debtor; . . .

      (F) managing agent of the debtor.

If a word or phrase is defined in the statute, then that definition governs.  Perroton v. Gray (In re Perroton), 958 F.2d

---

[8]  The definition of "corporation" in the Bankruptcy Code includes unincorporated limited liability companies, such as Lakeridge.  § 101(9)(A)(4); In re Longview Aluminum, LLC, 657 F.3d 507, 509 n.1 (7th Cir. 2011).

889, 894 (9th Cir. 1992) (citing Colautti v. Franklin, 439 U.S. 379, 392 (1979)). A term appearing in several places in the statute is ordinarily interpreted as having the same meaning each time it appears. Warfield v. Salazar (In re Salazar), 465 B.R. 875, 879-880 (9th Cir. BAP 2012) (citing Ratzlaf v. United States, 510 U.S. 135, 143 (1994)).

It is not disputed that Rabkin would not be included in any of the categories of insiders set forth expressly in § 101(31): he is not a director, officer, or a controlling party, relative of a controlling party, or a managing agent of Lakeridge. However, the statutory list of insiders is not exclusive. See 11 U.S.C. § 101(31) ("The term insider includes . . . ."); § 102(3) (explaining that, when used in the Code, the term "includes" is not limiting); In re Bonner Mall P'ship, 2 F.3d 899, 912 (9th Cir. 1993); Miller Ave. Prof'l & Promotional Servs v. Brady (In re Enterprise Acquisition Partners, Inc.), 319 B.R. 626, 631 (9th Cir. BAP 2004) ("The definition of 'insider' in 11 U.S.C. § 101(31) is not limiting: the use of the word 'includes' is indicative of Congress's intent not to limit the classification of insiders to the statutory definition."). In other words, Rabkin could be deemed an insider as to Lakeridge even if he did not fall into one of the classifications listed in the statute. The parties in this appeal and others sometimes refer to such parties as "non-statutory insiders."

**A. The bankruptcy court did not err in determining that Rabkin was not a non-statutory insider of Lakeridge.**

Because the Code's definition of an insider is not exclusive, courts must necessarily develop the factors that may render a

-11-

party a non-statutory insider. As explained by the Panel, at bottom, this category includes those individuals or entities whose business or professional relationship with the debtor "compels the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties." In re Friedman, 126 B.R. at 70. Put another way, a non-statutory insider is one "who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor." Id. (quoting S. Rep. No. 95-989, 95th Cong., 2nd Sess. 25 (1978) and H. R. Rep. No. 95-595, 95th Cong. 1st Sess. 312 (1977), reprinted in U.S. CODE CONG. & ADMIN. NEWS, 1978, pp. 5787, 5810, 6269). In determining whether a creditor qualifies as a non-statutory insider, courts look at the closeness of the parties, and the degree to which the creditor is able to exert control or influence over the debtor. In re Entm't Acquisition Partners, Inc., 319 B.R. at 626; Miller v. Schuman (In re Schuman), 81 B.R. 583, 586 (9th Cir. BAP 1987). The primary test of a non-statutory insider is whether the creditor "exercises such control or influence over the debtor as to render their transaction not arms-length." Id. In the context of debtor-creditor relations, "[a]n arm's-length transaction is '[a] transaction in good faith in the ordinary course of business by parties with independent interests. . . . The standard under which unrelated parties, each acting in his or her own best interest, would carry out a particular transaction.'" Anstine v. Carl Zeiss Meditec AG (In re U.S. Medical, Inc.), 531 F.3d 1272,

-12-

1277 n.4 (10th Cir. 2008) (quoting BLACK'S LAW DICTIONARY 109 (6th ed. 1990)).

Besides the control test and examination for an arms-length transaction, other courts have expanded the non-statutory insider group to include those with a close personal or romantic relationship with the debtor. Kaisha v. Dodson, 423 B.R. 888, 901 (N.D. Cal. 2010) (woman who was romantically involved with debtor considered an insider for stock transfer purposes); In re Demko, 264 B.R. 404, 408 (Bankr. W.D. Pa. 2001)(cohabitation may render individual an insider); In re McIver, 177 B.R. 366 (Bankr. N.D. Fla. 1995)(live-in girlfriend may be insider); but see In re Reinbold, 182 B.R. 244, 246 (D. S.D. 1995) (holding that mere cohabitation is insufficient and that "a de facto or de jure family relationship is required.").

In sum, then, to find that a party is a non-statutory insider as to a debtor, the bankruptcy court must consider: (1) the closeness of the parties and the relative control each has over the other, and (2) whether the degree of control is such that it would render its transaction with the debtor not arms-length.

Here, the bankruptcy court found that, despite his personal relationship with Bartlett, there was no control exerted by Rabkin over Lakeridge and/or Bartlett, and vice versa. Hr'g Tr. 77:25-78:6. The court also indicated in its comments on the record that it had reviewed the case law concerning personal relationships and determined that they would not support USB's argument that the relationship between Rabkin and Bartlett was such as to confer non-statutory insider status on Rabkin:

The cases that have found non-statutory insiders have

-13-

>    involved generally cohabitation, longer periods of
>    association, associations in which the property that the
>    parties become economically entwined, they share
>    checking accounts or sign on each other's checking
>    accounts. They use each other's credit cards. They
>    share each other's property. There was not any of that
>    sort of activity in this case.

Hr'g Tr. 77:14-24.

The bankruptcy court heard testimony from Rabkin and Bartlett concerning Rabkin's motivations for purchasing the MBP Claim, the lack of control exerted by either Rabkin or Bartlett over each other's actions, and the nature of their relationship. The court concluded in its Designation Order:

>    The court finds and concludes as a matter of law that
>    Dr. Rabkin is not a non-statutory insider because, among
>    other things: (a) Dr. Rabkin does not exercise control
>    over the Debtor; (b) Dr. Rabkin does not cohabit with
>    Ms. Bartlett and does not pay Ms. Bartlett's bills or
>    living expenses; (c) Dr. Rabkin has never purchased
>    expensive gifts for Ms. Bartlett.

Designation Order at ¶ 2, August 20, 2012. As noted above, whether a party is an insider is a question of fact we review for clear error. The bankruptcy court's determination in this case was consistent with case law and supported by the testimony of the witnesses and other evidence presented at the hearing. While others might come to a different conclusion, where two permissible views of the evidence exist, the fact finder's choice between them cannot be clearly erroneous. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74 (1985).

We conclude that the bankruptcy court did not clearly err in deciding that Rabkin was not a non-statutory insider as to Lakeridge. We therefore reject USB's contention in the cross appeal that Rabkin was a non-statutory insider and AFFIRM this portion of the bankruptcy court's decision.

-14-

**B.    The bankruptcy court erred in determining that, by acquiring MBP's insider claim, Rabkin also automatically became a statutory insider of Lakeridge.**

As noted above, none of the parties asserted that Rabkin was a statutory insider of Lakeridge as specified in the statute, because he was clearly not a member of one of the enumerated categories in § 101(31)(B).  Despite this, however, in its order, the bankruptcy court reasoned, "[b]ecause [MBP] is a statutory insider, Dr. Rabkin, as the assignee of the claim, acquired the same status as a statutory insider when he purchased the claim." Designation Order at § 6.  In short, the bankruptcy court apparently ruled that, as a matter of law, a non-insider becomes a statutory insider automatically by acquiring an insider claim.  In making this decision, the court did not rely upon any facts other than the existence of the assignment of Bartlett's claim to Rabkin.

The bankruptcy court's conclusion is not supported in the case law it cited for the proposition and, indeed, it is inconsistent with the Panel's published decisions.  The Panel has on multiple occasions explained that "insider determination . . . is made on a case-by-case basis, after the consideration of various factors."  In re Friedman, 126 B.R. at 70 (quoting In re Schuman, 81 B.R. at 586 n.1).  That the inquiry as to insider status is fact-intensive, and made on a case-by-case basis, is generally supported in the case law.  Browning Interests v. Allison, 955 F.2d 1008, 1011 (5th Cir. 1992) (holding that a non-statutory insider status must be determined by a factual inquiry into the Debtor's relationship with the alleged insider); Hyman v. Korshak & Assocs. (In re Island One, Inc.), 2013 Bankr.

-15-

LEXIS 662 *6 (Bankr. M.D. Fla. 2013) ("This more nebulous 'non-statutory' insider status must be determined by a factual inquiry into the Debtor's relationship with the alleged insider. The determination is fact-intensive and must be made on a case-by-case basis."); In re Velo Holdings, 472 B.R. 201, 208 (Bankr. S.D.N.Y. 2012) (insider status can be "be determined on a case-by-case basis from the totality of the circumstances"). Accord In re Smith, 415 B.R. 222, 233 (Bankr. D. Haw. 2009); Rainsdon v. Farson (In re Farson), 387 B.R. 784, 792 (Bankr. D. Idaho 2008).

Two of the three cases cited by the bankruptcy court in its ruling do not support its conclusion that when, by purchase or assignment, a non-insider acquires a claim from an insider, the new holder of the claim also assumes insider status. One case cited by the court, In re Applegate Prop., Ltd., 133 B.R. 827 (Bankr. W.D. Tex. 1991) does not deal with the purchase of an insider claim by a non-insider. Instead, that case dealt with the purchase of a non-insider claim by an insider, as the result of which the bankruptcy court deemed the insider's acceptance of a plan excluded for purpose of voting under § 1129(a)(10) because the claimant was, independent of the claim, an insider. The other case cited by the bankruptcy court, In re Holly Knoll P'ship, 167 B.R. 381, 386 (Bankr. E.D. Pa. 1994), is nearly identical, in that it also dealt with an insider purchasing a non-insider claim. In that case, the court also conducted an inquiry that considered more than the simple transfer of the claim in examining the claimant's insider status. Id. at 798-99. As can be seen, in both of these cases, the bankruptcy courts understood that the

transfer or assignment of a claim did not alone change the status of the claimant, and that further inquiry was necessary to determine that status.

The one case cited by the bankruptcy court that partly supports its conclusion that a non-insider who acquires an insider claim "steps into the shoes of that claimant" is the unpublished decision of our Court of Appeals, In re Greer W. Investment Ltd. P'ship, 81 F.3d 168, 1996 WL 134293 (9th Cir. Mar. 25, 1996). However, even this case does not tie the status of the claimant solely to the status of the claim he acquired. After agreeing with the bankruptcy court that the non-insider "assumed the claim subject to its insider status," the Ninth Circuit continued its analysis with "we next address whether [claimant] is an insider." 1996 WL 134293 at *3. Upon further examination, the Ninth Circuit determined that the claimant was in fact an insider where the debtor exercised considerable control over the creditor or vice versa. We take both of these observations to mean that the assignment or purchase of a claim does not by itself change the insider status of the claimant without further inquiry and factual findings to support designating a creditor as an insider.

There is also a logical and legal inconsistency in the bankruptcy court's reasoning that the assignment of a claim by itself may change the insider status of the claimant. If assignment of an insider claim to a non-insider alone changes the non-insider's status to insider, then it would follow that an assignment or purchase of a non-insider claim by an insider would change the insider into a non-insider. As both the Applegate and Holly Knoll courts observed, that cannot be allowed because, both

-17-

before and after the assignment, the insider is still an insider.

The bankruptcy court applied an erroneous legal rule in this case when it determined that Rabkin, who was otherwise a non-insider, became an insider in the Lakeridge bankruptcy case by merely purchasing an insider's claim. This portion of the bankruptcy court's decision is therefore REVERSED.

**II.**

**Since the bankruptcy court failed to make appropriate findings regarding the insider status of Rabkin, it was error to exclude Rabkin's acceptance of the plan of reorganization under § 1129(a)(10).**

Section 1129 provides the requirements for confirmation of a chapter 11 plan of reorganization. Of interest in this appeal is one such requirement, § 1129(a)(10). This provision dictates that, if a chapter 11 plan proposes to impair a class or classes of claims, to be confirmed at least one impaired class must affirmatively accept the plan, and that class acceptance must be determined without including the "acceptance of the plan by any insider."[9]

In this case, Lakeridge has just two creditors. Its proposed plan separately classified each creditor: Class 1 for secured creditor USB and Class 3 for Rabkin, the sole unsecured creditor. Because the plan does not provide for full payment to Class 3 creditors, that class is impaired. § 1124(1) (providing that a class is impaired unless, as to each claim in the class, the plan

_____

[9] Section 1129 provides "(a) The court shall confirm a plan only if all of the following requirements are met: . . . (10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider."

-18-

leaves unaltered the contractual rights of the claim). According to a ballot summary submitted to the bankruptcy court on July 30, 2012 by Lakeridge's counsel, Class 1 (USB) voted to reject the plan. However, Class 3 (Rabkin) voted to accept the plan.[10] Thus, if Rabkin's accepting vote is counted, Class 3 has accepted the plan, and Lakeridge has satisfied § 1129(a)(10).

Since the bankruptcy court determined that Rabkin was an insider, though, his vote would necessarily be excluded in determining whether Class 3 had accepted the plan. We conclude the bankruptcy court's decision that his vote must be excluded was incorrect because Rabkin was not an insider, and § 1129(a)(10) does not require that his acceptance of the Lakeridge plan be excluded in determining whether Class 3 accepted that plan.[11] We therefore REVERSE that portion of the bankruptcy court's order

---

[10] At oral argument before the Panel, counsel for USB suggested that Rabkin placed a condition on his accepting vote, "that he receive more money." We have examined the record and find no support for this allegation. Indeed, a copy of Rabkin's ballot is included in the bankruptcy docket at no. 240, Exhibit B, attached to Lakeridge's Certificate of Acceptance and Rejection of Chapter 11 Plan [Ballot Summary]. The ballot contains only a check mark after "accepts" and is signed by Rabkin with his address. There are no indications of a condition on the ballot.

[11] A leading treatise has described the test under § 1129(a)(10) as "somewhat mechanical on its face, and thus would not under a plain meaning analysis permit an inquiry into motive" of the accepting creditor. 7 COLLIER ON BANKRUPTCY § 1129.02[10] (Alan N. Resnick & Henry J. Somer, eds. 16th ed. 2009). Some courts have suggested that attempts to artificially manufacture classes to obtain an accepting impaired non-insider class raise questions under § 1129(a)(10). Windsor on the River Assocs. v. Balcor Real Estate Fin. (In re Windsor on the River Assocs), 7 F.3d 127, 183 (8th Cir. 1993). We decline to import an intent or purpose requirement into § 1129(a)(10). In re Hotel Assocs. of Tucson, 165 B.R. at 474. However, we note that, in § 1129(a)(3), the Code also requires, as a condition of confirmation, that the plan proponent prove that the plan has been proposed in good faith.

-19-

determining that Rabkin's vote to accept the plan must be excluded.

### III.

**The bankruptcy court did not err in declining to designate that Rabkin's acceptance of the plan was not in good faith for purposes of § 1126(e).**

Even if Rabkin is not an insider and his claim is not excluded under § 1129(a)(10), USB argues that his acceptance of the Lakeridge plan should be "designated" under § 1126(e). That Code provision permits the bankruptcy court, on request of a party in interest, to disqualify any plan vote that was not made in good faith, or that was not solicited in good faith or in accordance with the provisions of the Bankruptcy Code.[12] The bankruptcy court declined to designate Rabkin's acceptance here, and we perceive no error in this decision.

In this context, "good faith" does not require a creditor to act with selfless disinterest:

> If a person seeks to secure some untoward advantage over other creditors for some ulterior motive, that will indicate bad faith. See In re Marin Town Ctr., 142 B.R. 374, 378-79 (N.D. Cal. 1992). But that does not mean that creditors are expected to approach reorganization plan votes with a high degree of altruism and with the desire to help the debtor and their fellow creditors. Far from it.

In re Figter Ltd., 118 F.3d at 638-39. Put another way, a creditor acting out of self-interest "is not to be condemned simply because it frustrated [some other creditor's] desires."

---

[12] "On request of a party in interest, and after notice and a hearing, the court may designate any entity whose acceptance or rejection of such plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of this title." § 1126(e).

-20-

Id. at 639. On the other hand, if a person seeks to secure some untoward advantage over other creditors for some ulterior motive, that will indicate bad faith for purposes of § 1126(e). Id. at 639.

Rabkin testified that he purchased the MBP Claim as a business investment with the expectation of receiving a $30,000 return through the Lakeridge plan on a $5,000 investment. Rabkin Dep. 82:3-14. USB contends that Rabkin was involved in a romantic relationship with Bartlett, a principal of Lakeridge, and conspired with her to acquire the MBP claim solely to accept Lakeridge's plan of reorganization. On the one hand, Rabkin's argument that he was interested in making money is not an example of bad faith. In re Figter, 118 F.3d at 638. On the other hand, the acquisition of a claim solely to create an impaired assenting class may constitute bad faith under § 1129(a)(3). In re Hotel Assocs. Of Tucson, 165 B.R. 470, 475 (9th Cir. BAP 1994).

USB insists that Rabkin did not act in accordance with his financial interests, and as evidence, it points to his deposition where counsel for USB offered Rabkin $50,000, and then $60,000, to acquire his claim, which would generate an immediate profit of $20,000-30,000 above what Rabkin expected to gain through the plan. According to USB, Rabkin's refusal to take the bait clearly demonstrated his motive in the case was something other than financial gain. When a creditor appears to act against self-interest, that may be an indication of bad faith. In re Hotel Assocs. Of Tucson, 165 B.R. at 475.

The bankruptcy court addressed this argument both at the hearing on August 29, 2012, and in the order denying USB's

-21-

motions.  At the hearing, Rabkin expressed outrage that he was pressured to make a deal in the context of a deposition hearing. The court agreed that USB's tactic was "appalling" and apologized "on behalf of the legal profession" for USB's counsel's behavior. Hr'g Tr. 21:1-2.  In the order, the court characterized USB's ploy during the deposition as "offensive" and noted that Rabkin was under no obligation to accept the offer.  Designation Order at ¶ 3.  The court also decided in the order that Rabkin's purchase of a $2,671,000.00 unsecured claim under these circumstances for $5,000, with a $30,000 expected gain, was an example of a speculative investment and that no special due diligence was required by Rabkin.  Id.

As to USB's arguments concerning the Rabkin-Bartlett personal relationship, the bankruptcy court made several findings on the record, discussed above, indicating that the evidence presented to him did not support insider standing on the basis of a putative romantic relationship between Rabkin and Bartlett.  Designation Order at ¶ 2.  In addition, in the order, the court found that, on the evidence before it, "Ms. Bartlett did not ask Dr. Rabkin to vote in favor of the Debtor's Plan."  Designation Order at ¶ 3(c). In general, bad faith solicitation of a vote requires a "specific request" for a creditor's official vote.  In re Bataa/Kierland, LLC, 476 B.R. 558, 565 (Bankr. D. Ariz. 2012) (citing Century Glove v. First Am. Bank of New York, 860 F.2d 94, 102-03 (3d Cir. 1988).

Whether Rabkin's vote on the Lakeridege plan should be designated as "not in good faith" under § 1126(e) is a question of fact reviewed for clear error.  In re Figter, 138 F.3d at 638.

-22-

The bankruptcy court considered the testimony and evidence on this question and made adequate findings on the record and in the order to support its conclusions. <u>Anderson</u>, 470 U.S. at 573-74 (Where two permissible views of the evidence exist, the fact finder's choice between them cannot be clearly erroneous.). The bankruptcy court did not clearly err in declining to designate that Rabkin's acceptance of the plan was not in good faith for purposes of § 1126(e). We AFFIRM the bankruptcy court's decision in this respect.

**IV.**

**The bankruptcy court did not abuse its discretion in refusing to order that Bartlett submit to a second deposition.**

Rules 9014 and 7030 incorporate Civil Rule 30 in contested matters. Civil Rule 30 states, "Unless otherwise stipulated or ordered by the Court, a deposition is limited to 1 day of 7 hours." Civil Rule 26, also incorporated in this context by Rules 9014 and 7026, provides in relevant part,

> When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>          (I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>          (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>          (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Civil Rule 26(b)(2)(C).

USB contends that Bartlett was originally deposed only in her

-23-

capacity as representative of Lakeridge, and not in her personal capacity. Lakeridge and Rabkin counter that USB did indeed have the opportunity in the first deposition to question Bartlett about personal matters, including her relationship with Rabkin. At the hearing on June 12, 2012, the bankruptcy court declined to order Bartlett to appear at a second deposition because USB already had the opportunity to question Bartlett in the deposition on personal matters as part of an "extensive" discussion. The record on appeal supports this conclusion:

> Q:    When was that ([MBP Claim] transferred to
>       Mr. Rabkin?
>
> BARTLETT: I believe it was in October.  October 17th,
>           something like that.  In 2011.
>
> Q:    And . . . that's after the Village filed for
>       bankruptcy?
>
> BARTLETT: Yes.
>
> Q.    The most recent time?
>
> BARTLETT: Yes. . . .
>
> Q.    Okay. Did you know Mr. Rabkin before?
>
> BARTLETT: I did. . . .
>
> Q:    Did you know him personally?  Were you guys
>       friends?
>
> BARTLETT: Yes.

Bartlett Dep. 55:14–20, February 9, 2012.

The bankruptcy court's ruling that USB had ample opportunity to obtain the information it needed at the original deposition is consistent with Civil Rules 30 and 26, and is not (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record. The bankruptcy court did not abuse its discretion in refusing to order that Bartlett submit to

-24-

a second deposition.

**V.**

**The bankruptcy court made insufficient findings in support of its ruling concerning the application of the common interest privilege.**

Whether the bankruptcy court correctly determined that the common interest privilege applied to protect Rabkin's discussions with Lakeridge's attorney is an issue of law we review de novo. Richey, 632 F.3d at 563-64; Gonzalez, 669 F.3d at 978.

The bankruptcy court announced its decision on the record of the hearing on June 21 regarding the Discovery Requests, including its ruling that the common interest privilege applied and Rabkin was not required to respond to questions from USB's counsel about his discussions with Lakeridge's lawyer. The bankruptcy court was apparently unaware that the Ninth Circuit had just issued a published opinion relating to the common interest privilege a few weeks earlier, on May 10, 2012, in Pac. Pictures Corp. v. U.S. Dist. Ct., 679 F.3d 1121 (9th Cir. 2012).

The Common Interest Privilege (also known as Joint Defense Privilege) has long been recognized in the Ninth Circuit. Gonzalez, 669 F.3d at 978 (9th Cir. 2012); Continental Oil Co. v. United States, 330 F.2d 347, 350 (9th Cir. 1964). The bankruptcy court relied on Gonzalez in which the Ninth Circuit held that the privilege was applicable in both civil and criminal proceedings, and was based on the principle that "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." Gonzalez, 669 F.3d at 978. This privilege applies in bankruptcy proceedings. In re Mortg. &

-25-

_Realty Trust_, 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997). The privilege does not require a written agreement, and its application may be implied by "conduct and situation." _Gonzalez_, 669 F.3d at 978 (quoting _Continental Oil_, 330 F.2d at 350).

The bankruptcy court received a letter from Rabkin's attorney describing the nature and scope of the communications at issue:

> In advance of his [scheduled] Deposition, Rabkin and [his counsel] met with [Lakeridge's counsel at their office] to discuss in general terms the types of questions to expect at the deposition. The meeting lasted for 40 minutes and Rabkin anticipated that the discussions were being held in confidence. Later, at the deposition, counsel for lender [USB] asked deponent Rabkin what had been discussed at the meeting []. Smith and Hartman each asserted the common interest privilege and Hartman directed Rabkin not to answer any questions relating to the meeting at [Lakeridge Counsel's Office].

Lakeridge and Rabkin shared a common interest in that they both wanted to obtain confirmation of the plan of reorganization, Lakeridge as the debtor and plan proponent, and Rabkin for his financial interests. As a result, while they had separate counsel, they were engaged in furtherance of a common legal enterprise. _Gonzales_, 669 F.3d at 981 ("In the context of the joint defense privilege, only communications made in course of ongoing common enterprise and intended to further that enterprise are protected."). Rabkin believed that his communications with Lakeridge's attorney were protected as confidential, and asserted the common interest privilege before the bankruptcy court. _Gonzalez_, 669 F.3d at 981 ("The common interest rule requires communication to be given in confidence and that the client reasonably understood it to be so given.").

The bankruptcy court noted that "I believe there is a Common Interest Privilege. I believe the Ninth Circuit has defined

-26-

it. . . So your motion is denied." Hr'g Tr. 9:7-11, June 21, 2012.

However, because the bankruptcy court was not aware of the newer, Pac. Pictures opinion, it did not make the necessary finding that, in addition to all the factors discussed above, it was necessary to determine if there was an express or implied agreement between the parties to pursue a joint strategy:

> Rather than a separate privilege, the "common interest" or "joint defense" rule is an exception to ordinary waiver rules designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other. See Hunydee v. United States, 355 F.2d 183, 185 (9th Cir. 1965); see also In re Grand Jury Subpoenas, 902 F.2d 244, 249 (4th Cir. 1990) (collecting cases). However, a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception. Id. Instead, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement — whether written or unwritten. Cf. Continental Oil Co. v. United States, 330 F.2d 347, 350 (9th Cir. 1964).

Pac. Pictures Corp., 679 F.3d at 1130 (emphasis added).

Because the bankruptcy court did not make the necessary finding that, in addition to sharing a common interest in the outcome of the litigation, an express or implied agreement existed between Rabkin and Lakeridge to pursue a joint strategy, we must VACATE that portion of the order denying the Discovery Requests relating to the common interest privilege.

### CONCLUSION

We AFFIRM that part of the bankruptcy court's order denying the Discovery Requests that Bartlett need not submit to a second deposition. We VACATE the part of that order that the common interest privilege applied to Rabkin's discussions with Lakeridge's attorney.

-27-

As to the Designation Order, we AFFIRM the bankruptcy court's decision that Rabkin is not a non-statutory insider, and AFFIRM its decision declining to designate that Rabkin's acceptance of the plan was not in good faith for purposes of § 1126(e). We REVERSE the bankruptcy court's decision that Rabkin is a statutory insider, and REVERSE the decision excluding Rabkin's vote to accept the plan. We VACATE that part of the order deciding that the Debtor does not have an impaired, assenting class of claims necessary to confirm the plan, and the decision denying confirmation of the Lakeridge plan of reorganization. We REMAND these matters to the bankruptcy court for further proceedings consistent with this decision.